UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Khatuna Mchedlishvili,                                       Docket No.: 1:23-cv-8537

                        *Plaintiff*,                                  **COMPLAINT**

              -against-                                          **JURY TRIAL DEMAND**

Brett Finkelstein And Danielle Finkelstein,

                        *Defendants*.
-----------------------------------------------------------X

Plaintiff, KHATUNA MCHEDLISHVILI ("Plaintiff"), by and through her attorneys, Ballon Stoll P.C., complaining of Defendants, Brett Finkelstein and Danielle Finkelstein (collectively, "Defendants"), alleges upon personal knowledge, unless where information and belief is stated, the following:

1. This is an action brought for substantial compensatory damages and reasonable counsel fees premised upon Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the New York Labor Law §§ 190 *et seq*. and 650 *et seq*. ("NYLL").

## JURISDICTION AND VENUE

2. This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA and the NYLL, and supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367, in that the state law claims are so closely related to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

3. As the Eastern District is the district where a substantial part of the events giving rise to the claims occurred, and Defendants employed Plaintiff within this judicial district, venue is proper within this district pursuant to 28 U.S.C. § 1391(a)(2).

## THE PARTIES

*Plaintiff*

4. Plaintiff is an individual residing in the State of New York.

5. At all relevant times, Plaintiff was employed by Defendants.

6. At all relevant times, Plaintiff was employed by Defendants as a domestic worker and caregiver to the elderly mother of Defendants, Renee Finkelstein.

7. At all relevant times, Plaintiff was a non-exempt employee of Defendants within the meaning of the FLSA and the NYLL.

*Defendants*

8. At all relevant times, Defendant Brett Finkelstein was an individual residing in the State of New York.

9. At all relevant times, Defendant Danielle Finkelstein was an individual residing in the State of New York.

10. Upon information and belief, Renee Finkelstein is the elderly mother of Defendant Brett Finklestein and Defendant Danielle Finkelstein, who jointly employed Plaintiff as a caregiver for elderly Renee Finkelstein.

11. At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and NYLL.

12. Defendants are subject to lawsuit under the statutes alleged above.

## JURY DEMAND

13. Plaintiff hereby demands a trial by jury in this action.

## FACTS

14. Plaintiff worked for Defendants as a domestic worker and caregiver to elderly Renee Finkelstein from on or about December 29, 2022, until May 4, 2023.

15. At all relevant times, Plaintiff worked at Renee Finkelstein's residence located at 31 Chestnut Hill Dr., Upper Brookville, NY 11771.

16. On or about December 28, 2022, Plaintiff had her first meeting and interview with Danielle Finkelstein at Renee Finkelstein's residence, where Brett Finkelstein was also present.

17. Danielle Finkelstein instructed Plaintiff about her duties and responsibilities and Defendants determined her rate of pay.

18. As a domestic worker and caregiver, Plaintiff was expected to take care of Renee Finkelstein, as well as perform other domestic services such as cooking, cleaning, taking out trash, doing laundry, grocery shopping, and other household tasks as instructed by Defendants.

19. Plaintiff was expected to do general shopping and was either reimbursed for the expenses or Brett Finkelstein would send her money via PayPal to cover expenses.

20. From the start of Plaintiff's employment until January 28, 2023, she was expected to work seven (7) days per week from 8:00 a.m. until 5:00 p.m. and was paid a salary of $30.00 per hour, equaling a total daily pay of $270.00.

21. At all relevant times, Plaintiff was paid irregularly and did not receive her pay at the end of each week.

22. Plaintiff was supposed to be paid by check at the end of the week; however, most of the time she was paid late.

23. Since January 28, 2023, Plaintiff was required to work seven (7) days per week and to be available to give Renee Finkelstein assistance twenty-four (24) hours per day, as Renee Finkelstein's health condition had worsened and she needed additional care.

24. On January 28, 2023, Plaintiff received a salary raise and was paid $500.00 per day, totaling $3,500.00 per week going forward.

25. At all relevant times, Renee Finkelstein would wake up for the day at 5:00 a.m. and go to sleep at 8:30 p.m.

26. At all relevant times, Renee Finkelstein would wake up several times during the night and call for assistance.

27. At all relevant times, Renee Finkelstein required help with all daily activities including, *inter alia*, walking, changing clothes, bathing, etc.

28. At all relevant times, Plaintiff remained responsible for general household duties, including but not limited to cleaning, laundry, cleaning of appliances, trash and garbage removal, vacuuming, dusting, cooking, and other maid/housekeeper-type work.

29. As Renee Finkelstein required 24-hour attendance, Plaintiff hired an assistant, Ms. Maria, who would cover her duties and responsibilities on the weekends, working only on Fridays, Saturdays, and Sundays.

30. At all relevant times, Brett Finkelstein paid Plaintiff by check and typically paid her late and sometimes not at all.

31. In or around March 2023, Defendants started postponing Plaintiff's pay.

32. On or about March 10, 2023, Plaintiff received her last paycheck from Defendants.

33. On or about April 18, 2023, Plaintiff went to the hospital with Renee Finkelstein, whose condition had worsened dramatically. Renee Finkelstein was required to stay at the hospital for a week.

34. Every day thereafter, Plaintiff stayed at the hospital with Renee Finkelstein until 9:00 p.m., and returned to Renee Finkelstein's residence to sleep.

35. On or around April 19, 2023, Brett Finkelstein visited Renee Finkelstein at the hospital.

36. Plaintiff requested her outstanding wages and Brett Finkelstein promised to pay her.

37. On or about April 22, 2023, Plaintiff took a day off and texted both Defendants on a group chat asking for her overdue salary. She told Defendants that she would not return to work until she was paid.

38. At that time, Defendants promised that they would pay Plaintiff any overdue wages and would pay Plaintiff every two (2) weeks going forward.

39. Plaintiff reports she was not paid any wages as of March 10, 2023.

40. On or around May 4, 2023, Plaintiff again requested from Brett Finkelstein her overdue wages.

41. Brett Finkelstein replied by threatening that if Plaintiff left Renee Finkelstein unattended during the day, Brett Finkelstein would call the police because, he claimed, Plaintiff would be committing a felony.

42. Shortly after Plaintiff received that message, in response to the extreme nature of the threat, she suffered extreme stress and a panic attack, and she passed out on the floor at Renee Finkelstein's residence.

43. When she regained consciousness and was able to catch her breath, she called 911 and she was rushed to the emergency room.

44. Plaintiff was diagnosed with emotional distress and prescribed Xanax and stress-relief pills. She was also instructed to follow up with the doctor, as she hit her head when she fell.

45. Plaintiff has not been paid her wages due since March 10, 2023, although she inquired with Defendants on multiple occasions.

46. Plaintiff left her employment immediately following the incident on or around May 4, 2023.

47. Defendants were joint employers of Plaintiff and acted in the interest of each other with respect to employee Plaintiff, paid Plaintiff by the same method, and shared control over Plaintiff's employment.

48. Brett Finkelstein and Danielle Finkelstein each possessed substantial control over the working conditions of Plaintiff and over policies and practices with respect to the employment and compensation of the Plaintiff.

49. Defendants had power to hire and fire Plaintiff, controlled the terms and conditions of her employment, and determined the rate of pay.

50. Defendants jointly employed Plaintiff and were her employers within the meaning of the FLSA and the NYLL.

51. During the time of her employment, Defendants did not require Plaintiff to clock in and out and did not otherwise record Plaintiff's work hours.

52. Throughout her employment, Plaintiff was a non-exempt employee pursuant to the FLSA and the NYLL and was entitled to be paid at least the minimum wage rate for all hours worked, overtime compensation for all hours worked in excess of forty (40) hours per week, and

spread of hours wages equal to one (1) additional hour of work at the applicable minimum wage rate for each day in which Plaintiff's shift exceeded ten (10) hours.

53.     However, despite routinely working more than forty (40) hours per week and more than ten (10) hours per day, Plaintiff was not paid her compensation equal to one and one-half (1.5) times her regular hourly rate of pay or the minimum wage rate, whichever is greater, for all hours worked over forty (40) per week or spread of hours wages for each day in which Plaintiff's shift spanned more than ten (10) hours, for a period from March 10, 2023 until the last day of her employment.

54.     Defendants failed to furnish to Plaintiff, at the time she was hired or at any time thereafter, a notice containing her rate of pay, the designated payday, or other information required by NYLL § 195(1).

55.     Although Defendants initially promised to pay Plaintiff her wages on a weekly basis, Defendants frequently paid Plaintiff her wages late, until they completely stopped making payments to her as of March 10, 2023.

56.     Plaintiff also did not receive, with each wage payment, a statement listing her regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions, and anything otherwise required by NYLL § 195(3).

57.     Defendants unlawfully withheld Plaintiff's wages, including the proper minimum wage and overtime pay under the FLSA and NYLL.

58.     Defendant Brett Finkelstein threatened Plaintiff and caused her emotional distress after Plaintiff requested her overdue salary.

59.     In addition, Defendants never reimbursed Plaintiff for gas, although she used her own car to go shopping and/or to drive Renee Finkelstein to, *inter alia*, doctors' appointments and

family visits.

60. Defendants are liable for the FLSA and NYLL violations.

**AS AND FOR A FIRST CAUSE OF ACTION**
(Overtime Violations Under the FLSA)

61. Plaintiff repeats and realleges all prior allegations set forth above.

62. Pursuant to the applicable provisions of the FLSA, Plaintiff is entitled to overtime compensation of one and one-half (1.5) times her regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

63. From the beginning of her employment until her resignation on May 4, 2023, Plaintiff regularly worked in excess of forty (40) hours per week during her employment with Defendants.

64. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half (1.5) times her regular hourly rate of pay for each hour worked in excess of forty (40) hours in a week.

65. As a result of Defendants' violations of the law and failure to pay Plaintiff the required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

66. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages complied with applicable law, Plaintiff is entitled to additional damages equal to one hundred percent (100%) of the total wages due to her ("liquidated damages").

67. Judgment should be entered in favor of Plaintiff and against Defendants on the First Cause of Action in the amount of her unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
(Overtime Violations Under the NYLL)

68. Plaintiff repeats and realleges all prior allegations set forth above.

69. Pursuant to the applicable provisions of the NYLL, Plaintiff was entitled to overtime compensation of one and one-half (1.5) times her regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

70. Starting December 29, 2022, until May 4, 2023, Plaintiff regularly worked more than forty (40) hours per week during her employment with Defendants.

71. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half (1.5) times her regular hourly rate of pay for each hour worked in excess of forty (40) hours in a week.

72. As a result of Defendants' violations of the law and failure to pay Plaintiff the required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

73. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages complied with applicable law, Plaintiff is entitled to liquidated damages.

74. Judgment should be entered in favor of Plaintiff and against Defendants on the Second Cause of Action in the amount of her unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
(Minimum Wage Violations under the FLSA)

75. Plaintiff repeats and realleges all prior allegations set forth above.

76. Pursuant to the applicable provisions of the FLSA, Plaintiff was entitled to receive at least the statutory minimum wages for all hours worked.

77. Since March 10, 2023, Defendants knowingly failed to pay Plaintiff at least the statutory minimum wages for all of the hours she worked.

78. As a result of Defendants' violations of the law and failure to pay Plaintiff the required minimum wages, Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

79. As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

80. Judgment should be entered in favor of Plaintiff and against Defendants on the Third Cause of Action in the amount of Plaintiff's unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Minimum Wage Violations under the NYLL)

81. Plaintiff repeats and realleges all prior allegations set forth above.

82. Pursuant to the applicable provisions of the NYLL, Plaintiff was entitled to receive at least the statutory minimum wages for all hours worked.

83. Since March 10, 2023, Defendants knowingly failed to pay Plaintiff at least the statutory minimum wages for all of the hours she worked.

84. As a result of Defendants' violations of the law and failure to pay Plaintiff the

required minimum wages, Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

85. As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

86. Judgment should be entered in favor of Plaintiff and against Defendants on the Fourth Cause of Action in the amount of Plaintiff's unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION**
(Spread of Hours Violations Under the NYLL)

87. Plaintiff repeats and realleges all prior allegations

88. From January 28, 2023, Plaintiff regularly worked shifts that spanned more than ten (10) hours per day.

89. Since March 10, 2023, Defendants willfully failed to pay Plaintiff additional compensation of one (1) hour's pay at the basic minimum hourly wage rate for each day during which she worked shifts that exceeded ten (10) hours.

90. By failing to pay Plaintiff spread of hours pay, Defendants have willfully violated NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

91. As a result of Defendants' violations of the law and failure to pay Plaintiff the required spread of hours pay, Plaintiff has been damaged and is entitled to recover from Defendants all spread of hours wages due, along with reasonable attorneys' fees, interest, and costs.

92. As Defendants did not have a good faith basis to believe that their failure to pay spread of hours wages complied with the law, Plaintiff is entitled to liquidated damages.

11

93. Judgment should be entered in favor of Plaintiff and against Defendants on the Fifth Cause of Action in the amount of her unpaid spread of hours wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Failure to Timely Pay Wages under the NYLL)

94. Plaintiff repeats and realleges all prior allegations set forth above.

95. Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiff was entitled to be paid her earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

96. During the relevant period, Defendants routinely failed to pay Plaintiff all of her earned wages in accordance with the agreed-upon terms of employment.

97. During the relevant period, Defendants failed to timely pay Plaintiff all of her earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

98. Throughout the relevant period, Defendants failed to timely pay Plaintiff all overtime wages earned by Plaintiff, in violation of NYLL § 191(1)(a)(i).

99. As a result of Defendants' violations of the law and failure to pay Plaintiff in accordance with NYLL § 191(1)(a)(i), Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, costs, and interest.

100. As Defendants did not have a good faith basis to believe that their failure to timely pay wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

101. Judgment should be entered in favor of Plaintiff and against Defendants on the Sixth Cause of Action for all wages due, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR AN SEVENTH CAUSE OF ACTION**
(Failure to Provide Payroll Notices Under the NYLL)

102. Plaintiff repeats and realleges all prior allegations set forth above.

103. Defendants failed to furnish to Plaintiff, at her time of hire or at any time thereafter, notices containing her rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; her regular pay day designated by the employer; and other information required by NYLL § 195(1).

104. As Defendants failed to provide Plaintiff with payroll notices as required by NYLL § 195(1), Plaintiff is entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees, costs, and interest.

105. Judgment should be entered in favor of Plaintiff and against Defendants on the Seventh Cause of Action for liquidated damages, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
(Failure to Provide Wage Statements Under the NYLL)

106. Plaintiff repeats and realleges all prior allegations set forth above.

107. Throughout the relevant time period, Defendants failed to furnish to Plaintiff, with each wage payment, a statement listing: her regular and overtime rates of pay and basis thereof; the number of regular and overtime hours she worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

108. As Defendants failed to provide Plaintiff with wage statements as required by NYLL § 195(3), Plaintiff is entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all

reasonable attorneys' fees and costs.

109. Judgment should be entered in favor of Plaintiff and against Defendants on the Eighth Cause of Action for liquidated damages, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

110. As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost opportunities, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional and mental well-being, loss of enjoyment of life, including pain and suffering, shame, and humiliation.

1. On the First Cause of Action, judgment against Defendants in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

2. On the Second Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

3. On the Third Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

4. On the Fourth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

5. On the Fifth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

6. On the Sixth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

7. On the Seventh Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

8. On the Eighth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

9. Such other, further, and different relief as the Court deems just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.


Dated: New York, New York
       November 15, 2023

                                    BALLON STOLL P.C.

                                    By: *s/Marshall Bellovin*
                                          Marshall B. Bellovin, (MB5508).
                                          *Attorneys for Plaintiff*
                                          810 Seventh Avenue, Suite 405
                                          New York, New York, 10019
                                          212-575-7900
                                          mbellovin@ballonstoll.com